UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

DERRICK R. SPENCER,                :

    Plaintiff,                     :
                                              PRISONER
V.                                 :    CASE NO. 3:11-cv-50(RNC)

C.O. BYARS,                        :

    Defendant.                     :

                           RULING AND ORDER

Plaintiff Derrick R. Spencer, a Connecticut inmate proceeding pro se and in forma pauperis, brings this action under 42 U.S.C. § 1983 against Correctional Officer Byars alleging wanton and unnecessary infliction of pain in violation of the Eighth Amendment based on the manner in which Byars drove the plaintiff to and from the hospital after the plaintiff fell and was injured on October 10, 2010.  Officer Byars has moved for summary judgment arguing that (1) plaintiff has failed to exhaust administrative remedies and (2) the evidence does not support an Eighth Amendment claim.  Plaintiff has not responded to the motion for summary judgment in the manner required by Local Rule 56, although the docket shows that he received notice of the applicable rules.  Though his failure to comply with Local Rule 56 could be relied on to grant the defendant's motion, the Court declines to impose such a sanction and considers plaintiff's version of the facts as set forth in his verified submissions as

                                1

responsive to defendant's Local Rule 56(a)(1) Statement.  See Wilks v. Elizabeth Arden, Inc., 507 DF. Supp.2d 179, 185 (D. Conn. 2007); Duverge v. United States, No. 3:10cv1922(JGM), 2014 WL 1366194,*2 (D. Conn. April 7, 2014).

The verified amended complaint alleges that Byars drove the prison van in an "exceedingly fast and reckless" manner, "hitting every bump and pothole"; that the plaintiff pleaded with Byars to slow down because the "jolting and bouncing" was causing "extreme pain"; and that Byars ignored the plaintiff's pleas and continued to drive recklessly because he wanted to get off work as soon as possible that night.  Plaintiff's other verified submissions further allege that Byars laughed at his screams of pain on the way to and from the hospital.  Given these verified allegations, the Court declines to grant summary judgment.

   A. *Failure to Exhaust*

Defendant submits evidence that correctional counselor Melissa Marino has "carefully and thoroughly reviewed all logs and inmate grievances" filed by the plaintiff and although he filed a grievance about the condition of the stairs leading to his October 10, 2010 fall, there is no grievance about his transportation to and from th hospital on that date.  See Def.'s Mot. for Summary Judgment (ECF No. 48) at 2-3.  Defendant argues that plaintiff's failure to file a grievance bars him from proceeding here.

Pursuant to the Prison Litigation Reform Act, an inmate must exhaust available administrative remedies before bringing an action related to prison conditions. 42 U.S.C. § 1997e(a). In the Second Circuit, a three-part inquiry is required to assess whether a prisoner's failure to exhaust administrative remedies is fatal to his claims. Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004). First, "the court must ask whether administrative remedies were in fact 'available' to the prisoner." Id. Second, "[t]he court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." Id. (citations omitted). Finally, if administrative remedies were available and defendants are not estopped and have not forfeited their non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." Id. (internal quotations omitted).

In the present case, plaintiff submitted an administrative grievance -- an Inmate Administrative Remedy Form – dated November 3, 2010, addressing his fall "which resulted in me being transported to UConn Hospital." Attachment, Def.'s Mot.

3

for Summary Judgment (ECF No. 48-2) at 8.  He requested "that a non-slippery material be put on stairs to prevent similar incidents."  Id.  A disposition dated December 10, 2010 states: "I will forward your administrative remedy to the safety committee for further consideration."  A plaintiff "must exhaust his administrative remedies with regard to each claim he asserts in his federal complaint."  Baldwin v. Arnone, No. 3:12-cv-243 (JCH), 2013 WL 628660, at *5 (D. Conn. Feb. 19, 2013).  The grievance that plaintiff filed pertains to the condition of the stairs and not any claims against Byars arising from transportation to and from the hospital; thus, it is insufficient to exhaust administrative remedies for purposes of this action.[1]  That plaintiff submitted a grievance addressing a related claim about the same incident demonstrates that an administrative grievance process was available and belies any claims that plaintiff was not aware of the process or how to use it.  See Pl.'s Mot. for Summary Judgment (ECF No. 44) at 4 (asserting that plaintiff did not thoroughly pursue administrative complaints because, among other reasons, he was not made aware of administrative remedy protocol upon arrival to Garner).

---

[1] Nor would the grievance form alone be sufficient for exhaustion purposes, as indicated on the form itself: the box marked "you have exhausted DOC's Administrative Remedies" has not been checked.  See Attachment, Def.'s Mot. for Summary Judgment (ECF No. 48-2) at 8.

As to the second prong of the <u>Hemphill</u> test, however, defendant appears to have waived the affirmative defense by failing to raise it in his prior motion to dismiss filed in January 2013, approximately nine months before the filing of the present motion when discovery was still ongoing (ECF No. 19). <u>See</u> <u>Louis-Charles v. Courtwright</u>, No. 9:11-cv-147(GLS/TWD), 2014 WL 457951 at *5 (N.D.N.Y. Feb. 4, 2014)(defendants not entitled to summary judgment on exhaustion grounds when they failed to preserve the exhaustion defense by pleading it in their answers); <u>Harris v. Higley</u>, No. 05-CV-40S, 2009 WL 185989 at *9-10 (W.D.N.Y. Jan. 26, 2009) (denying summary judgment when defendants did not assert failure to grieve as an affirmative defense in their answer and only raised it for the first time in the motion for summary judgment); <u>Leybinsky v. Millich</u>, No. 98-cv-387, 2002 WL 2202577 (W.D.N.Y. Sept. 29, 2004)(same). Even if nonexhaustion could reasonably be raised for the first time at this stage, after discovery has closed, plaintiff's verified submissions assert that he was threatened with retaliation if he filed a grievance, which weighs against granting summary judgment.  Under the <u>Hemphill</u> test, a defendant forfeits the affirmative defense of nonexhaustion if he takes action to prevent a prisoner from using the grievance procedure, such as threatening him with retaliation.  <u>See</u> <u>McGee v. W.</u>, 9:10-CV-0238 MAD/GHL, 2012 WL 716273, at *3 (N.D.N.Y. Jan. 4, 2012)

5

report and recommendation adopted, 9:10-CV-238 MAD/TWD, 2012 WL 716195 (N.D.N.Y. Mar. 5, 2012).  Here, plaintiff does not allege that Byars threatened him, but rather that other correctional officers deterred him from filing a grievance by threatening him with retaliation.  Pl.'s Mot. for Summary Judgment (ECF No. 44) at 4-5 ("[T]he plaintiff did indeed complain to at least one or more correctional officer(s) and one or more medical staff member(s), and was told by at least one individual that if the plaintiff pursued administrative remedy or kept on verbally complaining; the plaintiff would most possibly be retaliated against.  Not only did this happen, but then I was also approached and questioned by a staff member.").  Even if threats by others are insufficient to require forfeiture under the second prong, threats of physical retaliation may constitute "special circumstances" that excuse a prisoner's failure to exhaust administrative remedies under the third part of the Hemphill test.  See Hemphill v. New York, 380 F.3d 680, 690 (2d Cir. 2004) ("[T]he court should also determine, even if some or all of the defendants are not estopped from asserting non-exhaustion as an affirmative defense, and even if Surber's threats did not suffice to render the grievance procedures actually unavailable to Hemphill, whether the threats themselves justified Hemphill's failure to file a grievance in the manner prescribed by DOCS.  Once again, the appropriate standard . . . is whether 'a

6

similarly situated individual of ordinary firmness,' would have been deterred from following regular procedures. And, like an inmate claiming retaliation, Hemphill should have the opportunity to develop facts that would demonstrate that [defendants' actions] would deter a reasonable inmate from pursuing grievances.")(internal quotation marks and citations omitted). Thus, even if a defense of nonexhaustion remained available at this stage, plaintiff's allegation of threatened retaliation would prevent summary judgment.

   *B. Insufficient Evidence*

   Defendant also seeks summary judgment on the ground that a reasonable jury could not find an Eighth Amendment violation. The issue is whether the plaintiff's version of the relevant events, accepted as true, would permit a jury to find in his favor.  At his deposition, plaintiff testified that Officer Byars "knew I was hurt but yet on the way to the hospital to UConn he was switching lanes at a high rate of speed, stopping short because he was almost rear-ending people. He was driving recklessly meaning he was hitting bumps, switching lanes, stopping short, accelerating.  And he never put my seatbelt on." (ECF No. 48-1) at 49.  Plaintiff further testified that Byars was "zigging in and out of traffic, speeding" and "switching lanes suddenly," which jostled the plaintiff.  Id. at 61.  Although he

does not purport to know Byars' exact speed, he testified that Byars was "driving faster than the fastest vehicle on the road" because "he was passing everybody" and estimates that "[i]f everybody was doing even five miles an hour under the speed limit, he was doing . . . let's just say 5 miles over the speed limit." Id. at 61-62.  Plaintiff describes moaning when the vehicle hit bumps and thinks that he said something to Byars about his discomfort within a couple of minutes after getting on the highway.  Id. at 62.  Finally, he explains that because he felt abrupt jolts that reminded him of driving over potholes on different roads, he thinks Byars drove over potholes at a high rate of speed.  Id. at 69.  In addition to his deposition testimony, he presents sworn statement that en route to the hospital he screamed and pleaded for Byars to drive more carefully because of his pain, Pl.'s Affidavit (ECF No. 44-2) at 4, and that Byars was "looking back at, and laughing at the plaintiff's screams of pain while he . . . knew without doubt that he is the cause of the plaintiff's pain."  See Pl's Affidavit (ECF No. 44-1) at 5.  Plaintiff states that, while in the hospital, Byars said to him: "Spencer, I won't be mad at you if we get back in time for me to clock out on time" and admitted that he was driving quickly so as not to miss playing basketball that morning.  Pl.'s Affidavit (ECF No. 44-2) at 5.  Finally, despite hearing plaintiff's diagnosis at the hospital, Byars

8

allegedly drove in the same reckless manner on the way back to the correctional facility, "ignoring and even laughing" as plaintiff screamed and begged him to drive more carefully. Id. at 6.  These allegations counter claims in Byars' affidavit that he "drove inmate Spencer to the hospital as carefully as [he] possibly could have driven," "was travelling with the normal flow of traffic and never drove unreasonably fast nor . . . purposely hit any potholes," and "did not change lanes unnecessarily nor . . . use the brakes of the vehicle unnecessarily."  (ECF No. 48-2) at 11.

    Crediting plaintiff's version, and giving him the benefit of permissible inferences, a jury could reasonably find that Officer Byars persisted in inflicting significant pain on the plaintiff during the drive to and from the hospital, not for any valid purpose, but maliciously and sadistically to make him suffer. Such wanton conduct violates the contemporary standards of decency embodied in the Eighth Amendment.  See Hudson v. McMillian, 503 U.S. 1, 9 (1992)(when prison officials use force to cause harm maliciously and sadistically, contemporary standards of decency always are violated whether or not significant injury is evident).  Wright v. Goord, 554 F.3d 255, 270 (2d Cir. 2009)(absence of significant injury does not end inquiry under the Eighth Amendment because standards of decency

are violated even in the absence of such injury if the defendant's use of force was malicious or sadistic).

Accordingly, the defendant's motion for summary judgment is hereby denied.

So ordered this 30th day of September 2014.

_____/s/ RNC_____

Robert N. Chatigny, U.S.D.J.